IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEREMY L. BROWNFIELD** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:20cv301-HSO-RPM** |
| | § | |
| | § | |
| **DENIS MCDONOUGH, Secretary, U.S.** | § | |
| **Department of Veteran Affairs** | § | **DEFENDANT** |

**CONSOLIDATED WITH**

| | | |
|---|---|---|
| **JEREMY L. BROWNFIELD** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:21cv135-HSO-RPM** |
| | § | |
| | § | |
| **DENIS MCDONOUGH, Secretary, U.S.** | § | |
| **Department of Veteran Affairs** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION [67] FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion [67] for Summary Judgment filed by

Defendant Denis McDonough, Secretary, U.S. Department of Veteran Affairs, which

is fully briefed. Having considered the record and relevant legal authority, the

Court is of the opinion that Defendant's Motion [67] should be granted and that

Plaintiff Jeremy L. Brownfield's claims should be dismissed with prejudice.

I. BACKGROUND

A. Factual background

1. Plaintiff's employment at the VA

Plaintiff Jeremy L. Brownfield ("Plaintiff" or "Mr. Brownfield") has been

employed by the United States Department of Veterans Affairs (the "VA") since

March 3, 2018.  *See* Ex. [67-1] at 52.  Plaintiff alleges that he suffers from several disabilities, including post-traumatic stress disorder ("PTSD"), panic disorder, excoriation disorder, mobility problems, spinal impairments, and a hearing impairment, and that he has requested various accommodations from Defendant based upon his disabilities.  *See* Am. Compl. [61] at 13-15.

From the beginning of his employment until April 5, 2019, Plaintiff worked as an Audio-Visual Presentation Specialist in the VA's Medical Media Service under his direct supervisor, Wayne Alley ("Mr. Alley").   *See* Ex. [67-1] at 52; Ex. [67-3] at 1.  At his deposition in this case, Plaintiff testified that it seemed to him that, "as [he] made more reasonable accommodation requests, [Mr. Alley] seemed to give [Plaintiff] lower valued work, work that was not important, work that was less creative, less choice work in giving the better work to the other graphic designers." Ex. [67-1] at 76.  According to Plaintiff, Mr. Alley "seemed to be having [him] revise work more often to -- to what [Plaintiff] felt was to keep [him] in front of the computer longer."  *Id.*  Plaintiff theorized that Mr. Alley stationed him away from others, in a studio performing graphic design work, in order to assure he was "kept . . . in that closet and less of a nuisance, so to speak."  *Id.*

Plaintiff asserted that Mr. Alley would over-scrutinize and over-revise his work because of his disabilities, his "reasonable accommodation requests," and his speaking openly about his "limitations."  Ex. [67-1] at 79.  Mr. Alley would purportedly blame Plaintiff for mistakes that were not made by him and sabotage his work, such as by editing or changing Plaintiff's photos, videos, and graphic

design projects to sully or degrade his work. *See id.* at 79-81. Plaintiff alleges that Mr. Alley's performance evaluation of him in October of 2018 was not "at the level that [he] was actually performing," as Plaintiff felt he "performed at an outstanding." *Id.* at 77. Plaintiff instead received a three-out-of-five or "successful" rating from Mr. Alley, which Plaintiff contends was based upon his disabilities. *See id.* According to Plaintiff, "if [Mr. Alley] would have provided reasonable accommodations in the beginning, he would have also believed that [Plaintiff] performed at an outstanding level." *Id.* at 78.

Plaintiff's last day in Medical Media Service was April 5, 2019. *See id.* at 53. He took "normal leave" followed by Family and Medical Leave Act ("FMLA") leave for some period of time. *See id.* On June 5 or 6, 2019, Plaintiff was transferred to a "scanning project" in "HIMS"[1] under Delia Moss ("Ms. Moss"). *See* Ex. [73-5] at 123-24. Plaintiff claims that he immediately experienced a hostile work environment and reported it. *See id.* He testified that "I wasn't in HIMS for very long under Ms. Moss before I met with the HR supervisor, James Leehan, and then was moved to Building 19, where I spent the next 10 months in solitude." *Id.* at 123-24. Plaintiff had his own office in Building 19. *See id.* at 137.

According to Plaintiff, he "was taken out of HIMS because of the complaints that [he] was making against Ms. Moss" that he was being subjected to a hostile work environment. *Id.* Plaintiff contends that,

> James Leehan said, "Well, we don't want to cause you any more
> mental harm, Mr. Brownfield, and we're going to find you some work to

---

[1] It is unclear from the record to what the acronym HIMS refers, but from context, it appears to be Health Information Management Services.

do," and then they put me in Building 19.  And I didn't see anyone for ten months.  Ten months with almost no oversight.

*Id.*

Based upon the record, it appears that Plaintiff is still employed by the VA, but it is not clear whether he is on leave or has any job responsibilities.  On July 6, 2021, Plaintiff filed a Notice [21] of Change of Address stating that effective July 10, 2021, he would reside in Vancouver, Washington.  *See* Notice [21] at 1.

2.   Plaintiff's application for disability benefits

On June 18, 2020, Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits through the Social Security Administration's ("SSA").  *See* Ex. [67-1] at 12; Ex. [74-1] at 2.  Plaintiff claimed that he suffered from a host of physical and mental impairments, *see* Ex. [74-1] at 4, and that he "became unable to work because of [his] disabling condition on April 5, 2019," *id.* at 14 (emphasis removed).

On January 16, 2020, Plaintiff's treating physician Dr. Alan Gatlin ("Dr. Gatlin") completed a Residual Functional Capacity Form on his behalf.  *See id.* at 26-29.   Dr. Gatlin was asked when he would expect Plaintiff to be able to return to work "with and/or without any restrictions."  *Id.* at 29.  Dr. Gatlin responded that "[p]atient is artificially propped up in his current employment with VA, without any assigned duty or responsibilities and is not a reflection of his employability.  There is no expectation for patient to be able to maintain employment at VA or anywhere else due to his disabilities."  *Id.*  Plaintiff has also provided correspondence from Dr. Gatlin to the SSA dated February 13, 2020, in which Dr. Gatlin stated:

4

> Mr. Jeremy Brownfield is employed with the Department of Veteran's Affairs, Gulf Coast Veterans Health Care System, at the Biloxi VA Medical Center in Biloxi, Mississippi, since 5 March 2018.
>
> Since 5 April 2019, occupational disabilities resulted in him permanently unable perform fully successful – or provide useful and efficient service—in his position of record: Audio Visual Presentation Specialist; or in a light duty assignment provided from 5 April 2019 and 5 June 2019.   Permanently assigned under the Medical Administration Service, Mr. Brownfield is heavily accommodated on the basis that, due to his disabilities, he has no assigned or meaningful duties; competencies, essential functions, or performance elements to evaluate.   As a result, his continued employment with VA is not a reflection of his *employability*, but rather evidence of his *unemployability*.   Please take this into consideration on his application for benefits.

*Id.* at 31 (emphasis in original).

Dr. Gatlin completed a Work Capacity Evaluation for Plaintiff on May 15, 2020, opining that Plaintiff was not "competent to WORK 8 hours a day" and was only "able to work" "0" hours. *Id.* at 32. (emphasis in original).   Dr. Gatlin further stated:

> Patient diagnosed with PTSD, Major Depression, Generalized Anxiety Disorder, Excoriation Disorder, and Manic/Depressive Disorder related to his hostile work environment.   Employer over-accommodated his disabilities by holding patient in a private office and stripping him of duties to cover-up his lack of competency resulting from his treatment. Significantly impaired concentration, stress tolerance, work functionally /w [sic] others.   Work stress causes patient to engage in self-harm.

*Id.*   Dr. Gatlin represented that Plaintiff was not "competent to perform his/her usual job" and had been "unable to perform any functions of his hired duty since April 2019 do [sic] to panic, hyper-arousal, and aforementioned conditions." *Id.*   Dr. Gatlin concluded that, "[c]ontinued employment is not recommended due to

sensitivity to regular employment stress, difficulty working with others, and

patient's engaging in self-harming compulsions during work hours, which in turn

worsen mental health." *Id.*

Plaintiff also corresponded with the SSA case manager in a handwritten

letter dated July 6, 2020:

> I've noted the great difficulty I've had getting a VA management official to document how my current employement [sic] at VA is not a reflection of my employability. Everyone I ask fears retaliation.
> I have not been assigned duties due to my mental and physical disabilities since April 2019. This is partially due to my disability (excoriation disorder) making people want nothing to do with me. This is primarily because no one wants to be blamed for waste by not using me, even though it's because of my disabilities.
> My 1st-line supervisor since March 2020 can attest that since I entered her service, I haven't been trained or tasked with duties.
> I am overaccommodated at VA for this reason.

Ex. [73-3] at 1.

On August 17, 2020, Dr. Gatlin completed another Residual Capacity Form

for Plaintiff. *See* Ex. [74-1] at 22-24. Dr. Gatlin was again asked when he would

expect Plaintiff to be able to return to work "with and/or without any restrictions."

*Id.* at 24. Dr. Gatlin's response remained substantively the same, stating that

"[p]atient is artificially propped up in his current employment with VA, without any

assigned duty or responsibilities and is not a reflection of his employability. There

is no expectation for patient to be able to maintain employment." *Id.*

Dr. Gatlin completed a second Work Capacity Evaluation on September 28,

2020, and again opined that Plaintiff was able to work "0" hours a day and was not

"competent to perform his/her usual job." Ex. [67-2] at 15. As for Plaintiff's

suitability for future reemployment or alternative work locations, Dr. Gatlin
responded that "[s]elf-employment may be an option, but it's not reasonable to
expect success in that vocation.  Patient is highly intelligent and creative, but
largely incompatible with traditional employment.  As stated by the patient, 'If
given enough time to work at my own pace, maybe eventually I can invent
something.'"  *Id.*

The SSA adjudged Plaintiff disabled as of April 5, 2019, and awarded him
SSDI benefits.  *See* Ex. [74-1] at 2, 18.  In its Disability Determination Explanation,
the disability adjudicator relied upon Dr. Gatlin's correspondence from February
and May 2020:

> Letter from Dr. Gatlin 2/13/2020 noted since 4/5/19-6/5/19 clmt had
> occupational disabilities, that resulted in permanent inability to
> perform fully successful or provide useful and efficient service in his
> assigned position…noted heavily accommodated and has no assigned
> or meaningful duties and cont employmen [sic] with VA is not a
> reflection of his actual employability.

> Letter forn [sic] Dr. Gatlin 5/15/2020 noted clmt "is an individual with
> mental and physical disabilities…noted Mr. Brownfield has been
> mentally harmed by his exposure to his alleged hostiel [sic] work
> environment in Junt [sic] of 2019 and removed from the environment
> by Human Resource Officer.  "It is my medical opinion that reassigning
> Mr. Bromwfield [sic] back to HIMS is highly [sic] to cause him further
> mental harm . . . ."

Ex. [73-4] at 7.[2]  According to the operative pleading in this case, Plaintiff has been
on leave without pay from the VA since December 3, 2020.  *See* Am. Compl. [61] at
2.

---

[2]  The Court has not been able to locate the May 15, 2020, letter from Dr. Gatlin.  *See* Ex.
[73-4] at 7.  The only document from Dr. Gatlin dated May 15, 2020, is a Work Capacity
Evaluation, but it does not appear to have the quotations referred to here.  *See* Ex. [74-1] at
32.

During Plaintiff's deposition in this case, which was taken on August 3, 2022, he was asked about his opinion as to his own employability. *See* Ex. [67-1] at 30. He responded that, while a medical opinion should be left to his doctor, his own opinion is that he is "severely limited and that [he] would need probably accommodations that would cause an undue hardship on an organization that would hire [him], whoever they are." *Id*. Plaintiff concluded that "the likelihood of that employment being sustained is probably slim." *Id*. at 31.

B.    Procedural history

Plaintiff initially made contact with an Office of Resolution Management Counselor (or "EEO Counselor") alleging employment discrimination on July 5, 2019. *See* Ex. [67-3]. On March 20, 2020, Plaintiff again contacted an EEO Counselor alleging a second complaint of discrimination. *See* Ex. [32-1]. Finally, on November 30, 2020, Plaintiff made contact with an EEO Counselor to lodge a third charge of discrimination. *See Brownfield v. McDonough*, 1:21cv135-HSO-RPM, Ex. [1-2] at 1 (S.D. Miss. Apr. 19, 2021). In sum, Plaintiff charged that Defendant had discriminated against him, in part based upon his disability; subjected him to a hostile work environment; failed to accommodate him; and retaliated against him due to prior EEO activity. *See, e.g.*, *id.*; Ex. [32-1] at 2-3; Ex. [67-3] at 1.

On June 25, 2020, a Right to File a Civil Action with respect to the first complaint was issued by the VA's Office of Employment Discrimination Complaint Adjudication (the "OEDCA"). *See* Ex. [1-1] at 1. On September 22, 2020, Plaintiff filed his original pro se Complaint [1] in this case against Defendant Denis

McDonough,[3] Secretary of the United States Department of Veteran Affairs ("Defendant") (the "Lead Case").  *See* Compl. [1].

On January 14, 2021, the OEDCA issued a procedural dismissal of the second complaint in light of the pending civil action in this Court.  *See Brownfield v. McDonough*, 1:21cv135-HSO-RPM, Ex. [1-1] at 1 (S.D. Miss. Apr. 19, 2021).   The agency dismissed the third complaint on February 11, 2021, for failure to state a claim and for raising the claims that were the basis of a pending civil action in this Court.  *See Brownfield v. McDonough*, 1:21cv135-HSO-RPM, Ex. [1-2] at 2 (S.D. Miss. Apr. 19, 2021).  Plaintiff then filed another Complaint in this Court on April 19, 2021, opening a second civil action, 1:21cv135-HSO-RPM (the "Member Case"). On March 8, 2022, the Magistrate Judge entered an Order consolidating the Lead and Member Cases for all purposes.  *See* Order [30] at 2.[4]

Plaintiff then filed an Amended Complaint [61] in this Lead Case, which combined all of his claims from both cases into one pleading.  *See* Am. Compl. [61]. Liberally construed, the Amended Complaint [61] advances various claims under the Rehabilitation Act of 1973, 29 U.S.C. § 794, specifically: (1) failure-to-accommodate discrimination; (2) disparate treatment discrimination; (3) retaliation; and (4) hostile work environment.  *See id.* at 6-19.   The pleading also makes stray remarks referencing the Whistleblower Protection Act.  *See id.* at 1, 5.

Defendant has now filed a Motion [67] for Summary Judgment pursuant to

---

[3]  At the time Plaintiff filed the Lead Case, the United States Secretary of Veterans Affairs was Robert Wilkie.  *See* Compl. [1].  Pursuant Rule 25(d), his "successor [was] automatically substituted as a party."  Fed. R. Civ. P. 25(d).
[4]  Citations to docket numbers in this Order are to those in the Lead Case.

Federal Rule of Civil Procedure 56, which is fully briefed.  *See* Mot. [67]; Mem. [68]; Resp. [71]; Mem. [72]; Reply [73].  Defendant argues that Plaintiff is judicially estopped from asserting his Rehabilitation Act discrimination claims based on alleged conduct that occurred after April 5, 2019, and that such claims based on acts occurring before that date are time-barred.  *See* Mem. [68] at 3-6.  Likewise, Defendant contends that Plaintiff's hostile work environment claim is time-barred and otherwise lacks merit.  *See id.* at 6-8.  As for his disparate treatment claim, Defendant argues that Plaintiff cannot show that he was treated less favorably than non-disabled employees, which is fatal to his claim.  *See id.* at 8.

## II.  DISCUSSION

A.    Plaintiff's references to discovery

In Plaintiff's Response [71] in opposition to Defendant's Motion [67] for Summary Judgment, he asks that the Court deny the Motion [67] or, in the alternative, hold it in abeyance "until the Defendant complies with the Court's order to provide the emails withheld during discovery."  Resp. [71] at 1.  Plaintiff appears to be referring to a Motion [64] for Sanctions he filed on November 28, 2022, which the Magistrate Judge denied on January 27, 2023.  *See* Order [75].  The Magistrate Judge determined that "Plaintiff's discovery request [was] overly broad and not proportional to the needs of the case" and that there was no basis for compelling discovery responses from, or sanctioning, Defendant.  *Id.* at 2.  Plaintiff appealed that decision, but this Court affirmed the Magistrate Judge's Order [75].  *See* Order [80] at 12.  This means that there is no discovery order with which Defendant must

comply, nor any forthcoming additional discovery that Plaintiff had not yet received

when he responded to Defendant's Motion [67] for Summary Judgment, *see* Resp.

[17].  Thus, there is no basis for the Court to hold Defendant's Motion [67] for

Summary Judgment in abeyance.

To the extent Plaintiff claims that additional discovery is needed under Rule

56(d), any request for relief on that basis is not well taken and should be denied.

*See* Resp. [71] at 1; Mem. [72] at 2.  Defendant's Motion [67] for Summary

Judgment was not an early-filed motion, as it was filed on the dispositive motion

deadline set forth in the Case Management Order, after discovery had closed.  *See*

Mot. [67]; Text Order, Nov. 17, 2022.  Moreover, Plaintiff has not shown by affidavit

or declaration that he cannot present facts to justify his opposition to the Motion

[67] for Summary Judgment, or that he otherwise needs additional time to develop

facts necessary to defend against summary judgment.  *See* Fed. R. Civ. P. 56(d).   As

such, there is no reason to defer consideration of Defendant's Motion [67].  *See id.*;

*Dominick v. Mayorkas*, 52 F.4th 992, 995 (5th Cir. 2022).

B.     <u>Summary judgment standard</u>

Under Federal Rule of Civil Procedure 56(a), summary judgment in a party's

favor is appropriate if "the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  If the movant carries this initial burden, the nonmovant must present

evidence beyond the pleadings that demonstrates "specific facts showing that there

is a genuine issue for trial."  *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160

(5th Cir. 2021); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  To rebut a properly supported motion for summary judgment, the nonmovant must show, with "significant probative evidence," that there exists a genuine issue of material fact for resolution at trial.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022) (quotation omitted).  When "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant," summary judgment is appropriate.  *In re Deepwater Horizon*, 48 F.4th 378, 382 (5th Cir. 2022).  The Court views all facts and inferences in the light most favorable to the nonmovant, *see RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010), but conclusory allegations and unsubstantiated assertions are not enough for a nonmovant to survive summary judgment, *see Wallace v. Tex. Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996).

C.     The Rehabilitation Act

All of Plaintiff's discrimination claims are brought under the Rehabilitation Act, 29 U.S.C. § 794.  Under the Rehabilitation Act,

> [n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency.

29 U.S.C. § 794(a).

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d).  Thus, jurisprudence interpreting either the Americans with Disabilities Act or the Rehabilitation Act is applicable to both.  *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).

D.     Analysis

1.     Plaintiff's failure-to-accommodate discrimination claims

A plaintiff may sue a federal agency under the Rehabilitation Act when he suffers discrimination because of his disability; this includes a failure by the employer to reasonably accommodate his disability.  *See* 29 U.S.C. § 794(a); *Phillips v. Prator*, No. 20-30110, 2021 WL 3376524, at *2 (5th Cir. Aug. 3, 2021).  Such a claim "operates under the same standards as Title I of the ADA."  *Allen v. United States Postal Serv.*, No. 21-30699, 2022 WL 2383869, at *2 (5th Cir. July 1, 2022) (citing 29 U.S.C. § 794(d)).  To support a failure-to-accommodate claim under the Rehabilitation Act, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the agency; and (3) the agency failed to make reasonable accommodations for those limitations.  *Id.* (citing *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013)).  "A failure-to-accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question *has not* suffered adverse

13

employment action." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014) (emphasis in original).

If the plaintiff is not a qualified individual, the failure-to-accommodate inquiry ends. *See Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021). The term "qualified" in this context means that "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). A disabled person's qualification to work focuses on what he was physically capable of doing. *See Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 523 (5th Cir. 2021).

To avoid summary judgment on the qualified-individual issue, a plaintiff "must show either (1) that he could perform the essential functions of his job in spite of his disability or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Weber*, 989 F.3d at 324 (quotation omitted). Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires," but it "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). "The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quotation omitted).

When a qualified employee requests an accommodation for his disability, the employer must engage in an "interactive process" with the employee to ascertain what changes could allow him to continue working. *Dillard v. City of Austin*, 837 F.3d 557, 562 (5th Cir. 2016). "In other words, employer and employee must work together in good faith, back and forth, to find a reasonable accommodation." *Id.* The Fifth Circuit has explained that

> [t]his should be an ongoing, reciprocal process, not one that ends with the first attempt at accommodation, but one that continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed.

*Id.* (quotation omitted).

a.   Plaintiff's failure-to-accommodate claims arising after April 5, 2019

(i)   *The parties' arguments*

Defendant contends that Plaintiff is judicially estopped from bringing a Rehabilitation Act claim for any alleged acts of discrimination occurring after April 5, 2019, which was the date on which the Social Security Administration (the "SSA") deemed Plaintiff disabled. *See* Mem. [68] at 3-5; Reply [73] at 3. Defendant argues that, because Plaintiff made sworn statements that were supported by his treating physician, Dr. Alan Dale Gatlin, that he suffers from multiple medical conditions rendering him totally disabled and incapable of working, and because Plaintiff was awarded SSDI benefits based upon these statements, Plaintiff is estopped from taking the position that he can perform the essential functions of his job with or without an accommodation, which is an essential element of his claim.

*See* Mem. [68] at 4-5; *see* Reply [73] at 2-6.

Plaintiff responds that his and his treating physician's representations cannot be used as admissible evidence for purposes of Defendant's Motion [67]. *See* Mem. [72] at 2. Plaintiff also attempts to distinguish between the SSA's criteria for determining disability and the Rehabilitation Act's definition of a qualified individual who can perform the essential functions of the position either with or without reasonable accommodation. *See id.* at 2-3. Plaintiff insists that, even though he was disabled for purposes of SSDI benefits, he nevertheless meets the definition of "qualified" under the Rehabilitation Act for the time period at issue. *See id.* at 3. As for Dr. Gatlin's statements concerning Plaintiff's purported "courtesy" or "artificial" employment at the VA and having no assigned duties since April 2019, Plaintiff argues that these statements "are not medical opinions," are not within Dr. Gatlin's expertise, constitute hearsay, and are not based upon his personal knowledge in contravention of Federal Rule of Civil Procedure 56(c)(4). *Id.* at 5-6.

Plaintiff also points out that Dr. Gatlin's report was completed on January 16, 2020, which Plaintiff says was 10 months after the time period at issue, *see id.* at 8, and he argues that some of the statements from his deposition cannot be considered because he was speaking in the present tense at that time, not as to the time period at issue in his Rehabilitation Act claims, *see id.* at 9. Moreover, Plaintiff contends that he can provide an explanation for any assertion that was made during the process of acquiring disability benefits that he was unable to work,

16

which he believes would be sufficient to withstand summary judgment. *See id.* at 10.

      (ii)     *The doctrine of judicial estoppel*

In seeking dismissal of Plaintiff's post-April 5, 2019, failure-to-accommodate claims, Defendant relies upon judicial estoppel due to Plaintiff's position and statements concerning his disability to the SSA and his receipt of SSDI benefits. *See* Mem. [68] at 3-5. The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quotation omitted). In other words, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* (quotation omitted).

In considering the preclusive effect of an SSDI claim upon a later ADA claim, the Supreme Court has stated that there are "situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999). While the ADA and the Rehabilitation Act define a "qualified individual" as a disabled person who can perform essential functions of his job with reasonable accommodation, the SSA determines whether the individual is disabled for SSDI purposes, without taking the possibility of reasonable accommodation into account. *See id.* The result is that an ADA or

Rehabilitation Act "suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it," *id.* (emphasis in original), and "the SSA sometimes grants SSDI benefits to individuals who not only can work, but are working," *id.* at 805.

Nonetheless, the Supreme Court has recognized that, "in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim." *Id.* Because a plaintiff bears the burden of demonstrating that he is a qualified individual with a disability for the purposes of an ADA or Rehabilitation Act claim, his "sworn assertion in an application for disability benefits that [he] is, for example, 'unable to work' will appear to negate an essential element of [his] ADA case—at least if [he] does not offer a sufficient explanation." *Id.* at 806.

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Id.* at 807. "If a plaintiff fails to explain the inconsistency between his qualification and disability, or if the explanation is insufficient, then his ADA claim is judicially estopped by his earlier statements regarding disability." *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 463 (5th Cir. 2005).

(iii)   *Whether the Court can consider Dr. Gatlin's statements made to the SSA*

Plaintiff contends that Dr. Gatlin's statements during the SSDI application process concerning his purported "courtesy" or "artificial" employment at the VA and having no assigned duties since April 2019 "are not medical opinions," are not within Dr. Gatlin's expertise, constitute hearsay, and are not based upon his personal knowledge in contravention of Rule 56(c)(4).  Mem. [72] at 5-6.  Thus, Plaintiff maintains that the Court cannot consider them in resolving Defendant's Motion for Summary Judgment.

Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  "[T]he personal knowledge requirement of Rule 56 can be reasonably inferred from the circumstances—such as the affiant's identity and relationship to the relevant subject matter."  *Garza-Flores v. Mayorkas*, 38 F.4th 440, 445 (5th Cir. 2022) (quotation omitted).

An expert witness may offer opinion testimony if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b)   the testimony is based on sufficient facts or data;
(c)   the testimony is the product of reliable principles and methods; and
(d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589

(1993).

In this case, Defendant does not rely upon an affidavit or declaration from Dr. Gatlin to support his Motion, nor has he proffered Dr. Gatlin as an expert witness.   Defendant only cites Dr. Gatlin's statements to the extent that Plaintiff himself relied upon them in seeking and obtaining SSDI benefits.  *See* Mem. [68] at 4 (citing Ex. [67-2] at 11, 30).   In the Court's view, Defendant's judicial estoppel arguments, which are based in part upon Dr. Gatlin's statements to the SSA at Plaintiff's behest, do not implicate any Rule 56(c)(4) or Rule 702 concerns because Defendant is neither introducing an affidavit or declaration of Dr. Gatlin, *see* Fed. R. Civ. P. 56(c)(4), nor offering his expert opinion, *see* Fed. R. Civ. P. 702.  As such, they may be considered in resolving Defendant's Motion [67].

(iv)   *Whether Plaintiff's post-April 5, 2019, claims are judicially estopped*

Plaintiff's position throughout the SSDI process, both through his own sworn statements or those he supplied that were made by his treating physician Dr. Gatlin, was that as of April 5, 2019, he was "unable to work" because of disability, even though he had retained his position at the VA without any assigned or meaningful duties.  Ex. [74-1] at 14 (Plaintiff's application); *see, e.g., id.* at 26-29, 31-32; Ex. [67-2] at 15.  Dr. Gatlin maintained throughout the process that Plaintiff could work "0" hours and had been "unable to perform any functions of his hired duty since April 2019."  Ex. [74-1] at 32; *see* Ex. [67-2] at 15.  Plaintiff's obvious and undeniable intent before the SSA was to persuade it, for purposes of receiving SSDI benefits, that he was "unable to work" because he was being "overaccommodated" by

the VA and had not been given any assigned duties since April 2019. Ex. [73-3] at 1; *see* Ex. [74-1] at 24. The SSA relied upon these representations to Plaintiff's benefit in that he was ultimately awarded SSDI benefits. *See, e.g.,* Ex. [73-4] at 7.

Plaintiff's assertions before the SSA concerning his inability to work since April 5, 2019, contradict his contention in this case that he has been a "qualified individual" under the Rehabilitation Act since that date. The earlier SSDI claim genuinely conflicts with Plaintiff's current claim for failure to accommodate post-April 5, 2019, *see Cleveland*, 526 U.S. at 805, and this conflict negates an essential element of Plaintiff's Rehabilitation Act claim unless he offers a "sufficient explanation," *id.* at 806. However, Plaintiff has offered no competent summary judgment evidence that would explain the discrepancy between his statements to the SSA and his claims of being a qualified individual under the Rehabilitation Act during the same time period. *See* Resp. [71]; Mem. [72]. Because Plaintiff cannot meet an essential element of his failure-to-accommodate claim after April 5, 2019, summary judgment is appropriate on Plaintiff's post-April 5, 2019, failure-to-accommodate claims. *See Cleveland*, 526 U.S. at 805-06.

b.    Failure-to-accommodate claims arising before April 5, 2019

(i)    *The parties' arguments*

Defendant argues that Plaintiff's discrimination claims for failure to accommodate which arose before April 5, 2019, are time-barred because he did not contact an EEO Counselor within 45 days of the date the alleged discrimination occurred. *See* Mem. [68] at 5-6 (citing 29 C.F.R. § 1614.105(a)(1)). Plaintiff does not

dispute that his first contact with an EEO Counselor was not until more than 45 days after April 5, 2019, but he contends that "the discrimination occurs from the last day the employee needed an effective accommodation and wasn't provided one." Mem. [72] at 4. According to Plaintiff, "even if the Defendant's argument here is relevant, several thresholds established by EEOC are relevant to extend the cited 45-day window." *Id.* at 7. Plaintiff argues that he has "claimed all relevant and appropriate exceptions to time-barring since his first engagement in the Federal EEO Process." *Id.* However, it is unclear from Plaintiff's briefs to what "thresholds" he is referring, or upon what "relevant and appropriate exceptions" he relies. *See id.*

      (ii)    *Exhaustion requirement under the Rehabilitation Act*

An aggrieved person in the federal sector advancing a claim under the Rehabilitation Act must satisfy the procedural requirements set forth in Title VII of the Civil Rights Act of 1964, including exhaustion of administrative remedies. *See Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017). Under the applicable federal regulation, the claimant

> must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
> (1) An aggrieved person must initiate contact with a Counselor *within 45 days of the date of the matter alleged to be discriminatory* or, in the case of personnel action, within 45 days of the effective date of the action.
> (2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by

circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a) (emphasis added).  "As a precondition to seeking this judicial relief, . . . complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).

Interpreting this same regulation in a Title VII case, the Supreme Court has held that the timeliness of a plaintiff's contact with the EEO Counselor depends upon the type of claim being made and when the limitations period for that type of claim would have commenced.  *See Green v. Brennan*, 578 U.S. 547, 553 (2016).  The limitations period commences when the plaintiff "has a complete and present cause of action," meaning when the plaintiff could "file suit and obtain relief."  *Id.* at 554 (quotations omitted).

The Supreme Court has distinguished between discrete acts such as termination and failure to promote and repeated conduct that cannot be said to occur on any particular day, such as a hostile work environment.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002).   For discrete acts, a plaintiff may only file a charge for such acts within the requisite limitations period. *See id.* at 114.  For a claim based on the cumulative effect of individual acts, such as a hostile work environment, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.* at 117.

23

However, in at least one case involving an ADA claim for failure to accommodate, the Fifth Circuit has considered the "continuing violation doctrine" and concluded that a failure-to-accommodate claim constitutes a discrete act that does not qualify for the continuing violation exception. *See Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005).

(iii)     *Whether Plaintiff properly exhausted his pre-April 5, 2019, claims*

Plaintiff has not cited to any evidence in the record demonstrating that his pre-April 5, 2019, failure-to-accommodate claims could be considered continuing violations of his rights, rather than discrete claims. *See id.*  And Plaintiff does not dispute that he did not make initial contact with an EEO Counselor until July 5, 2019, which was 91 days after April 5, 2019. *See* Ex. [67-3]; Mem. [72].  This lapse in time places Plaintiff's pre-April 5, 2019, failure-to-accommodate claims well outside the 45-day window during which he was required to contact an EEO Counselor. *See* 29 C.F.R. § 1614.105(a)(1).

While there are certain exceptions to the 45-day limitations period set forth in the applicable regulation, *see id.*, Plaintiff only generally refers or alludes to those exceptions in opposition to summary judgment, without elaboration or citation to competent summary judgment evidence to support their application, *see* Mem. [72] at 7.  The Fifth Circuit has affirmed the dismissal of a claim for failure to comply with the 45-day pre-complaint processing requirement when the plaintiff "offered no explanation in [that] court or the court below for how or why he was prevented from complying with the 45-day time limit." *Baker v. McHugh*, 672 F.

App'x 357, 361 (5th Cir. 2016). The same is true here, nor has Plaintiff presented competent summary judgment evidence to establish a basis for tolling. *See id.* Defendant's Motion for Summary Judgment as to Plaintiff's pre-April 5, 2019, failure-to-accommodate claims will be granted based upon his failure to properly exhaust available administrative remedies. *See id.*

2.   <u>Plaintiff's disparate treatment disability discrimination claims</u>

a.   <u>Relevant legal authority</u>

In cases where, as here, a plaintiff relies upon circumstantial evidence of disability, a court applies the three-step *McDonnell Douglas* burden shifting framework. *See Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 525 (5th Cir. 2022) (ADA case) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 380 (5th Cir. 2007) (Rehabilitation Act case). A plaintiff must first establish a prima facie case of disparate treatment. *See Gosby*, 30 F.4th at 525; *Crawford*, 245 F. App'x at 380. This requires a plaintiff to show that he "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees." *Hoffman v. Baylor Health Care Sys.*, 597 F. App'x 231, 235 (5th Cir. 2015). "The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Gosby*, 30 F.4th at 527 (quotation omitted).

If the plaintiff makes a prima facie showing of discrimination, then "the burden shifts to the government to 'articulate some legitimate nondiscriminatory

reason for the employee's rejection.'" *Crawford*, 245 F. App'x at 378 (quoting

*McDonnell Douglas*, 411 U.S. at 802).  If the government meets this burden, the

plaintiff must then create a genuine issue of material fact that "either (1) the

government's reason is not true, but is instead a pretext for discrimination; or (2)

the government's reason, while true, is only one of the reasons for its conduct and

that discrimination was a motivating factor in the government's decision."  *Id.*

When a plaintiff proffers similarly situated employees in support of an

employment discrimination claim, the relevant employment actions must have

taken place "under nearly identical circumstances," but the Fifth Circuit has

emphasized that "nearly identical is not synonymous with identical."  *Hoffman*, 597

F. App'x at 235.    Under this standard, employees who have different work

responsibilities or different supervisors than the plaintiff, or who "were subject to

adverse employment actions too removed in time or for violations too dissimilar in

type," are not sufficiently similarly situated to the plaintiff to be used as

comparators.  *Id.* at 236.

b.    The parties' arguments

Defendant takes the position that Plaintiff's disparate treatment claim fails

because he has not identified any non-disabled employees who were treated more

favorably than him.  *See* Mem. [68] at 8; Reply [73] at 13-14.  Plaintiff counters that

he "identified employees in his initial disclosure during the Discovery phase" and

that he "identified employees as *similarly situated* in his claims."  Mem. [72] at 5

(emphasis in original).   Plaintiff further contends that "[o]ther similarly situated

employees were identified in Defendant's own policies." *Id.*

c.   Whether Plaintiff has created a fact question on his disparate treatment claim

Although Plaintiff contends that he "identified employees" in his initial disclosures, that he "identified employees as *similarly situated* in his claims," and that Defendant identified similarly situated employees in "Defendant's own policies," he does not identify any of these employees or cite any competent summary judgment evidence demonstrating the identity of these other employees. Resp. [72] at 5 (emphasis in original); *see* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party asserting that a fact is genuinely disputed to support the assertion by citing to particular parts of materials in the record). To the extent that Plaintiff relies upon allegations from his unsworn Amended Complaint [61] or arguments advanced in his briefing, "[a]rguments in briefs, like allegations in a complaint, are assertions, not evidence." *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015).

Nor does Plaintiff cite any record evidence to show that any other employee was in fact similarly situated or was treated more favorably than him. *See* Resp. [72] at 5; *but see* Fed. R. Civ. P. 56(c)(1)(A); *Hoffman*, 597 F. App'x at 235. Although Plaintiff states that he "identified employees" in his initial disclosures, *see* Resp. [72] at 5, those disclosures do not appear to be contained in the summary judgment record. Plaintiff has not otherwise supported his assertions by citations to any specific evidence in the summary judgment record. *But see United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) ("Judges are not like pigs, hunting

for truffles buried in the record." (quotation omitted)).

Defendant has submitted Plaintiff's Second Amended Objections and

Reponses to Defendant's Interrogatories dated August 9, 2021.  *See* Ex. [67-4].

When he was asked to identify non-disabled, similarly situated individuals who

were treated more favorably, Plaintiff responded:

> Plaintiff emphasizes again and clarifies that this interrogatory is
> inappropriate at this stage of discovery, as no co-workers have been
> part of discovery, and Plaintiff has no way to know which co-workers
> were outside his protected class or which were indeed similarly
> situated. This question fails to define which protected class, such as
> disability or protected actions. If disability is the protected class, it is
> again emphasized that: (1) Plaintiff cannot determine which other
> employees are disabled, nor which complaints the Defense is referring
> (Such as *disparate treatment* complaints), and (2) which "relevant
> respects" the Defense is referring to. If protected actions is the
> protected class, then it is up to discovery to reveal who else has
> engaged in protected actions to determine if they are in fact within the
> same protected class of similarly situated individuals.

*Id.* at 2 (emphasis in original).   In sum, Plaintiff has not identified any employee

who was similarly situated in this or any other competent summary judgment

evidence before the Court.  *See id.*

Based upon the record, Plaintiff simply has not identified any comparator,

which is fatal to his disparate treatment claim, meaning that he has failed to create

the initial presumption of unlawful discrimination.  *See Hoffman*, 597 F. App'x at

235.   Defendant's Motion for Summary Judgment should be granted as to this

claim.

3.    Plaintiff's retaliation claims

Plaintiff claims that he was subjected to "reprisal on the basis of [his] EEO

activity, complaints, [and] reports of hostile work environment." Am. Compl. [61] at 1. Specifically, he alleges that between March 2018 and April 2019, Mr. Alley subjected him to "retaliation for [his] EEO activities; disclosures of his wrong- doings; and reasonable accommodation requests." *Id.* at 11. Defendant argues that there is no temporal connection between any EEO activity and any alleged acts prior to April 2019, as the initial EEO complaint was not made until after that date. *See* Reply [73] at 12-13.

"No person shall be subject to retaliation for opposing any practice made unlawful by . . . the Rehabilitation Act . . . ." 29 C.F.R. § 1614.101(b). When a plaintiff presents indirect evidence of unlawful retaliation under the Rehabilitation Act, a court must apply the *McDonnell Douglas* burden-shifting analysis. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (ADA case); *Cohen v. Univ. of Texas Health Sci. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014) (Rehabilitation Act case). To establish a prima facie case of retaliation, a plaintiff must show that: "(1) she engaged in an activity protected by the [Rehabilitation Act], (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action." *Lyons*, 964 F.3d at 304. If the plaintiff does so, the employer must provide a legitimate, non-retaliatory reason for its action. *See id.* If the employer satisfies this burden of production, the burden then shifts back to the plaintiff to demonstrate that his employer's proffered reason for its action is pretext for retaliation. *See id.*

Plaintiff asserts that he suffered retaliation between March 2018 and April

2019, *see* Am. Compl. [61] at 11, but the record clearly reflects that he did not make initial contact with an EEO Counselor until after this timeframe, on July 5, 2019, *see* Ex. [67-3], and he has not cited any evidence that shows any alleged retaliation occurring after he began any EEO activity.  In light of this timeline of events, Plaintiff cannot show any causal connection between his EEO activity and any adverse action, as the alleged adverse actions all occurred prior to the first EEO complaint.  *See id.*; Am. Compl. [61] at 11; *Lyons*, 964 F.3d at 304; *Cohen*, 557 F. App'x at 277.  Because this precludes Plaintiff from establishing a prima facie case of retaliation, Defendant's Motion for Summary Judgment should be granted as to the retaliation claims.  *See Lyons*, 964 F.3d at 304; *Cohen*, 557 F. App'x at 277.

4.     Plaintiff's hostile work environment claims

a.     Relevant legal authority

For a hostile work environment claim under the Rehabilitation Act, a plaintiff must show that: (1) he is a member of a protected group; (2) he was subjected to harassment; (3) that the harassment was based *solely* on his disability; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.  *See Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 506 & n.8 (5th Cir. 2002); *Byrnes v. City of Hattiesburg*, 662 F. App'x 288, 290 (5th Cir. 2016); *Travis v. Potter*, 221 F. App'x 345, 348 (5th Cir. 2007).  "[T]he disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Travis*, 221 F. App'x at

348 (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001)).

In determining whether a work environment is abusive, factors to consider include "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Flowers*, 247 F.3d at 236 (quotation omitted).  "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not suffice to alter the terms and conditions of employment." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 (5th Cir. 2021) (quotation omitted).  Isolation, ostracism, and other "minor annoyances" in the workplace are insufficient to support a hostile work environment claim. *Montgomery-Smith v. George*, 810 F. App'x 252, 259 (5th Cir. 2020) (Title VII case); *see also, e.g., Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII . . . does not set forth a general civility code for the American workplace." (quotation omitted).

b.    The parties' arguments

Defendant contends that Plaintiff has offered no details as to what actions of the VA he claims constituted a hostile work environment. *See* Mem. [68] at 7. According to Defendant, the only actions Plaintiff identified during his deposition were those of Mr. Alley, which occurred before Plaintiff was transferred from his supervision on April 5, 2019. *See id.*  Because Plaintiff failed to contact an EEO Counselor within 45 days of that date, Defendant argues that the hostile work

environment claim would be time-barred. *See id.* Even if properly exhausted, Defendant contends that the claim lacks merit because Plaintiff has presented no evidence that he was subjected to any harassment because of his disability or that the alleged harassment was so severe that it altered the conditions of Plaintiff's employment. *See id.* at 7-8.

In response, Plaintiff states that Defendant's evidence is restricted to the period of time when he was assigned under Mr. Alley in Medical Media Service but that his claims in the Amended Complaint are broader. *See* Mem. [72] at 4. Plaintiff asserts that his deposition and pleadings "clearly describe harassment and claims of a hostile work environment throughout his employment by multiple officials." *Id.* Plaintiff insists that his "hostile work environment claims are not catastrophically tied to proving Alley's actions were committed 'because of' a disability," as "Alley's actions were also retaliatory in nature." *Id.* at 5.

Plaintiff states that his "Amended Complaint, beginning at Item No. 14, evidence[s] repeatedly the Plaintiff's ability to prove actions that constitute a hostile work environment." *Id.* at 10. As for instances of alleged harassment by others than Mr. Alley, again relying upon his pleadings, Plaintiff maintains that "Pages 15 and 16 feature well-pleaded complaints of harassment." *Id.* at 10-11.

c.   Whether Plaintiff can maintain a hostile work environment claim

The only claimed harassment that is supported by any record evidence is that allegedly perpetrated by Mr. Alley and Ms. Moss. *See* Ex. [67-1] at 76-81; Ex. [73-5] at 123-24, 137. As discussed previously concerning his pre-April 5, 2019, failure-to-

accommodate claims, Plaintiff last worked under Mr. Alley's supervision on April 5, 2019, *see id.* at 53, but he did not make initial contact with an EEO Counselor until July 5, 2019, *see* Ex. [67-3].  This lapse in time places his hostile work environment claims as to Mr. Alley's conduct outside the 45-day window during which Plaintiff was required to contact an EEO Counselor, such that he did not properly exhaust those claims.  *See* 29 C.F.R. § 1614.105(a)(1).   Summary judgment as to those claims is therefore warranted.  *See id.*

Even if Plaintiff's hostile work environment claim with respect to Ms. Moss was somehow deemed a continuing violation related to Mr. Alley's earlier conduct, and therefore properly exhausted, the relevant question raised by Defendant's Motion is whether Plaintiff has presented evidence that supports a finding that he was subjected to harassment based upon his disability that was so severe that it affected a term, condition, or privilege of his employment. *See* Mem. [68] at 7; *Soledad*, 304 F.3d at 506 & n.8.   The competent summary judgment evidence does not support such a finding.

As the Court has stated, to the extent that Plaintiff relies upon allegations from his unsworn Amended Complaint [61] or arguments contained in his briefing, "[a]rguments in briefs, like allegations in a complaint, are assertions, not evidence." *Collins*, 609 F. App'x at 795.  Such references are insufficient to withstand summary judgment.  *See id.*; *see also Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 334 (5th Cir. 2020) ("A court may not rely on mere factual allegations in an unverified complaint to make summary-judgment rulings.").

In his Response, Plaintiff generally refers to his deposition testimony to support his hostile work environment claim, but he does not cite any specific portions of it in the record. *See* Mem. [72] at 4. Plaintiff has supplied a four-page excerpt of his deposition transcript, but this portion of his deposition concerns his limitations and capacity to work. *See* Ex. [71-1]. Plaintiff has pointed to no testimony or other evidence concerning any alleged harassment. *See id.*; Mem. [72] at 4.

Nor do the deposition excerpts supplied by Defendant support a claim that Plaintiff was harassed because of any disability, or that any such harassment was sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment. *See* Ex. [67-1]; Ex. [73-5]; *Travis*, 221 F. App'x at 348. Plaintiff's testimony concerning hostile work environment blurs that claim with those for failure to accommodate, disparate treatment, and retaliation, but even considering all of his allegations with respect to both Mr. Alley and Ms. Moss, Plaintiff cannot show that he was subjected to a hostile work environment. *See* Ex. [67-1] at 77-81.

Plaintiff testified that he was subjected to a hostile work environment by Mr. Alley when he was given three out of five stars on a performance evaluation. *See* Ex. [67-1] at 77-78. However, Plaintiff could only offer his own subjective belief that this review was because his disability, and when pressed on the basis for this belief, he testified, "I don't recall exactly." *Id.* at 77. Plaintiff claimed that there were comments about making allowances for him and that it was "implied" that the

allowances on the basis of his disabilities "weren't reasonable accommodations," and that had reasonable accommodations been provided to him in the beginning, he would have received a higher performance evaluation. *Id.* at 78.

Plaintiff also cites to "general poor treatment," or "[d]isparate treatment," by Mr. Alley in over-scrutinizing his work and blaming him for errors, which he says was "contributive to a hostile work environment." *Id.* at 79. Based upon "suspiciously close . . . timing and comments," Plaintiff testified that he had "just a reasonable belief" that these actions occurred due to him being disabled. *Id.* at 80. Plaintiff also claims that Mr. Alley "sabotaged" his work in various ways, which created a hostile work environment. *See id.* at 81.

As for Ms. Moss, Plaintiff testified that he began experiencing a hostile work environment "nearly immediately" after he was transferred to her supervision. Ex. [73-5] at 123. According to Plaintiff,

> [s]he was extremely rude. She made, you know, rude gestures. She would ignore you. She would close the door on you. She began moving me around and changing my work environment substantially. And then I made a list, you know, of the things and the claims. But denying me access to a computer, denying me access to her service. Just . . . blatant retaliation.

*Id.*

Considering the competent summary judgment evidence before the Court, this is insufficient to show that Plaintiff was subjected to a hostile work environment based upon his disability. *See Soledad*, 304 F.3d at 506 & n.8; *Travis*, 221 F. App'x at 348. There is no evidence cited that would tend to show that Ms. Moss's alleged treatment of Plaintiff was in any way due to his disability. *See* Ex.

35

[73-5]; Mem. [72].  Without such a link, any hostile work environment claim under the Rehabilitation Act necessarily fails.  *See Soledad*, 304 F.3d at 506 & n.8; *Travis*, 221 F. App'x at 348.   Although Plaintiff relies upon his own belief that Mr. Alley's alleged harassment of him was due to his disabilities, a plaintiff's subjective belief that the conduct was based upon a protected characteristic is insufficient to withstand summary judgment.  *See Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012) (Title VII case).   This would seem to be particularly true under the Rehabilitation Act where harassment must be based *solely* on the claimant's disability.  *See Soledad*, 304 F.3d at 506 n.8; *Byrnes*, 662 F. App'x at 290. Because there is no evidence of such a causal link, Plaintiff's hostile work environment claims should be dismissed for this reason alone.

Even if there were a correlation between the alleged harassment and his disabilities, Plaintiff has not cited any competent summary judgment evidence that would show that the harassment was sufficiently pervasive or severe to alter the conditions of his employment at the VA and create an abusive working environment.  *See Flowers*, 247 F.3d at 237; *Travis*, 221 F. App'x at 348.  In determining whether a work environment is abusive, a court must consider "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."  *Flowers*, 247 F.3d at 237.

In this case, Plaintiff has not cited evidence concerning the frequency of the

alleged harassment, and from his own description of Mr. Alley's and Ms. Moss's alleged conduct, it does not appear that any alleged harassment was severe, physically threatening, or humiliating.  *See* Ex. [67-1] at 76-81; Ex. [73-5] at 123-24, 137.   Instead, most of the alleged conduct, particularly as to Ms. Moss, consisted of social slights such as Ms. Moss being "rude," making "rude gestures," ignoring Plaintiff, and closing the door on him.  Ex. [73-5] at 123.  There is no indication that any of these actions were taken due to Plaintiff's disabilities, and Plaintiff "wasn't in HIMS for very long under Ms. Moss" before he met with human resources and was transferred.  *Id.*[5]

Plaintiff complains that Mr. Alley over-scrutinized his work and blamed him for the errors of others, but he has not presented evidence that this alleged harassment *unreasonably interfered* with his work performance.  *See* Ex. [67-1] at 79; *Flowers*, 247 F.3d at 237.   Based upon the record before the Court, all of the relevant factors weigh against a finding that Plaintiff was subjected to a hostile or abusive environment.  *See Flowers*, 247 F.3d at 237.  Finally, even if such an environment existed, the evidence shows that the VA took prompt, remedial action by transferring Plaintiff upon learning about the alleged harassment, further negating this claim.  *See, e.g.,* Ex. [73-5] at 123-24 (Plaintiff discussing transfer from Ms. Moss's supervision); *Soledad*, 304 F.3d at 506 & n. 8.

In sum, viewing the evidence in the light most favorable to Plaintiff, he has failed to create a genuine dispute of material fact that he was subjected to a hostile

---

[5] According to the Amended Complaint [61], Plaintiff worked under Ms. Moss for approximately one month, from June 6, 2019, to July 9, 2019.  *See* Am. Compl. [61] at 4.

work environment based upon his disabilities.  *See Soledad*, 304 F.3d at 506 n.8;
*Byrnes*, 662 F. App'x at 290; *Travis*, 221 F. App'x at 348.  Defendant's Motion for
Summary Judgment should be granted as to this claim.

5.   <u>Plaintiff's Whistleblower Protection Act reference</u>

In the Preliminary Statement of Plaintiff's Amended Complaint [61], he
alleges that he suffered "reprisal on the basis of" several things, including his
"whistle blower [sic] disclosures."  Am. Compl. [61] at 1.  The pleading claims that
Plaintiff had disclosed that "employees were unlawfully deleting Veteran medical
records to reduce workload and the scanning backlog" and that he "had filed a
whistleblower disclosure regarding the same with OIG," meaning the VA Office of
Inspector General.  *Id.* at 4.  According to the Amended Complaint [61], Plaintiff
"made numerous communications that constitute disclosures under the Whistle
Blower [sic] Protection Act," but contends that the "complaints and allegations are
too numerous to reasonable index in this complaint."  *Id.* at 5.

The Court does not construe the Amended Complaint [61] as stating a
plausible claim under the Whistleblower Protection Act (the "WPA"), 5 U.S.C.
§ 2302(b)(8), but even if Plaintiff intended to raise such a claim, Defendant argues
that the WPA is inapplicable because "[t]here are no reporting allegations present
in Brownfield's complaint, nor are there any allegations of retaliation based on such
reporting."  Mem. [68] at 9.   Plaintiff responds that "evidence supporting
allegations of discrimination also supports allegations of WPA claims related to
disclosers [sic] related to discrimination."   Mem. [72] at 5.  According to Plaintiff, he

"made multiple disclosures to appropriate managers that are protected by WPA, many of which were by email." *Id.* at 13.   Plaintiff insists that retaliatory actions by agency officials were motivated by his conduct that was protected by both the WPA and the Rehabilitation Act. *See id.*

> 5 U.S.C. § 2302(b)(8) provides that
>
> [a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority –
>
> \* \* \*
>
> (8)   take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of--
> > (A)   any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences--
> > > (i)   any violation of any law, rule, or regulation, or
> > > (ii)   gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,
>
> if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs . . . .

5 U.S.C. § 2302(b)(8).

To the extent the WPA could apply in this case, Plaintiff has not cited any competent summary judgment evidence that supports the allegations in his Amended Complaint [61] concerning his purported disclosure of the alleged destruction of medical records. *See* Am. Compl. [61] at 4; Mem. [72].   Moreover, Plaintiff's arguments in opposition to summary judgment demonstrate that his allegations concerning any WPA conduct are coextensive with those that he was retaliated against in violation of the Rehabilitation Act due to his EEO complaints.

*See* Mem. [72] at 5, 13.  As the Court has already determined, there could be no retaliation claim since the complained-of actions occurred before Plaintiff's EEO complaints.  Any WPA claim would fail for this reason as well, as there is no evidence that anyone with the VA took, failed to take, or threatened to take or fail to take any personnel action because of Plaintiff's disclosure of alleged Rehabilitation Act violations.   *See* 5 U.S.C. § 2302(b)(8).

### III.  CONCLUSION

To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.  Defendant's Motion [67] for Summary Judgment should be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [67] for Summary Judgment filed by Defendant Denis McDonough, Secretary, U.S. Department of Veteran Affairs is **GRANTED**, and Plaintiff Jeremy L. Brownfield's claims are **DISMISSED WITH PREJUDICE**.  A separate final judgment will be entered pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 28th day of February, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE